UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES GREER,<br><br>    Plaintiff,<br><br>v.<br><br>THE TENNESSEE DEPARTMENT OF CORRECTION et al.,<br><br>    Defendants. | Case No. 3:20-cv-00726<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:   The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This civil rights action under 42 U.S.C. § 1983 arises from pro se Plaintiff James Greer's incarceration at the Bledsoe County Correctional Complex (BCCX) in Pikeville, Tennessee. (Doc. No. 7.) Greer alleges that BCCX staff, acting in accordance with Tennessee Department of Correction (TDOC) policy, denied him adequate medical care in violation of his constitutional rights. (*Id.*) Defendants TDOC Commissioner Tony Parker and TDOC Medical Director Dr. Kenneth Williams have filed a motion to dismiss Greer's claims against them (Doc. No. 17), and Greer has filed a response in opposition to that motion (Doc. No. 20). Defendant Dr. Ernest Joseph Jones has also filed a motion to dismiss Greer's claims against him (Doc. No. 25) to which Greer has filed a response (Doc. No. 29) and Jones has filed a reply (Doc. No. 30). For the reasons that follow, the Magistrate Judge will recommend that both motions to dismiss be denied.

## I. Factual and Procedural Background[1]

Greer initiated this action by filing a complaint under 42 U.S.C. § 1983 in late August 2020. (Doc. No. 1.) On September 17, 2020, Greer filed a complaint in a separate action (*Greer v. Jones et al.*, Case No. 3:20-794), which was consolidated with this action because it involved "materially the same claim." (Doc. No. 6, PageID# 35.) The Court granted Greer's application to proceed *in forma pauperis* and ordered him to file a single amended complaint containing his claims from both actions. (Doc. No. 6.) In compliance with that order, Greer filed an amended complaint against Defendants TDOC Medical Director Dr. Kenneth Williams, TDOC Commissioner Tony Parker, BCCX staff physician Dr. Ernest Jones, and the Bledsoe Clinical Pharmacy (Doc. No. 7) that is now the operative pleading in this action.

Greer suffers from gastritis and has a history of a bleeding gastric ulcer. (Doc. No. 7.) He has treated these conditions with various acid-reducing medications for over 35 years. (*Id.*) Most recently, his condition was treated with Prilosec prescribed by TDOC physicians. (*Id.*) In July 2020, a nurse at BCCX told Greer that, under a new TDOC policy, he would no longer be prescribed Prilosec and would instead have to purchase it from the commissary. (*Id.*) Greer told the nurse that he could not purchase medication from the commissary due to his indigence; the nurse responded that there were no exceptions to the policy. (*Id.*)

After his Prilosec prescription was terminated, Greer experienced "acute abdominal pain[.]" (*Id.* at PageID# 42.) He requested emergency sick calls on July 30, 2020, and August 3, 2020, but was not prescribed Prilosec or antacids at either examination and was told that he would not be prescribed Prilosec because "recent studies indicated long-term use of Zantac could possibly

---

[1] The facts in this Report and Recommendation are taken from Greer's amended complaint (Doc. No. 7) and are presumed to be true for purposes of resolving the defendants' motions to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

lead to cancer." (Doc. No. 7.) Greer lost seven pounds because he had difficulty eating "due to pain and heartburn." (*Id.* at PageID# 43.)

Dr. Betsy Bahn conducted a telehealth consultation with Greer in August 2020 and recommended that Greer receive "Prilosec at a higher dose immediately and said she would start the paperwork to provide Protoni[x, another acid-reducing medication], as soon as it was available." (*Id.*) Jones conducted a follow-up visit and, instead of implementing Bahn's recommendation and prescribing Prilosec, ordered that Greer have another medical consult. (Doc. No. 7.) The specialist who conducted the second consult, Dr. Tersa Lively, agreed with Bahn and wrote orders for Greer to receive Prilosec and antacids. (*Id.*) Those orders were "over-ruled by pharmacy." (*Id.* at PageID# 44.) After another consult (Greer does not specify with whom), Greer began receiving prescription Prilosec, but that prescription was "abruptly cancelled again" on November 10, 2020. (*Id.*)

Greer alleges that being deprived of Prilosec caused him to experience "pain, suffering and indigestion and indignation[,]" "continued [his] gastritis and now esophagitis[,]" and likely caused "permanent injury to [his] 73 year old stomach[.]" (*Id.* at PageID# 44, 51.) He alleges that Williams and Parker are responsible for the TDOC policy change that resulted in him not receiving the medication and that Jones and the pharmacy are directly responsible for refusing to provide the medication. (Doc. No. 7.) Greer seeks compensatory and punitive damages and injunctive relief including having access to his own medication and reform of the "system" to ensure that all incarcerated people receive appropriate medical treatment regardless of their ability to pay for it. (*Id.* at PageID# 51.)

The Court screened Greer's amended complaint under 28 U.S.C. § 1915(e)(2) and found that Greer had stated a colorable claim for damages against Jones in his individual capacity based

on Jones's "personal involvement in depriving [Greer] of medication that was deemed to be medically necessary by two specialists as well as [Greer]'s prior medical history." (Doc. No. 8, PageID# 95.) The Court also found that Greer stated a claim for injunctive relief against Parker and Williams in their official capacities because he alleged that they are responsible for the TDOC policy that caused his injuries. (Doc. No. 8.) Greer's claims against the Bledsoe Clinical Pharmacy were dismissed because the pharmacy "is not a 'person' subject to suit under Section 1983." (*Id.* at PageID# 95 (citation omitted).)

Greer completed service packets for Jones, Parker, and Williams, and summonses were issued for all three defendants and delivered to the U.S. Marshals Service to effect service of process. (Doc. No. 9.) Parker and Williams were served on January 6, 2021. (Doc. Nos. 10, 11.) After the Marshals Service made several unsuccessful attempts to serve Jones, Jones's counsel executed a waiver of service on May 4, 2021. (Doc. Nos. 22, 24.)

Parker and Williams have filed a motion to dismiss Greer's claims against them under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 17). They argue that Greer has not stated a claim that they were deliberately indifferent to his serious medical needs because Greer has not alleged that they were personally involved in the denial of his medication or that Parker and Williams "intended that indigent inmates be denied necessary medication." (Doc. No. 18, PageID# 132.) Greer responds that Parker and Williams "actively authorized and enforced the pharmacy policy" that involved "the deletion of Prilosec as prescribed medication from the pharmacy formulary for heartburn and gastritis, a discontinuation of all ongoing Prilosec therapy and a prohibition for staff physicians and nurse practitioners to initiate Prilosec medication." (Doc. No. 20, PageID# 136–37.)

Jones has also moved to dismiss Greer's claims against him under Rule 12(b)(6). (Doc. No. 25.) Jones argues that, by ordering a second consultation for Greer, Jones "took the steps he thought were appropriate to gain approval for [Greer] to again begin receiving his medications" and therefore did not act with deliberate indifference to Greer's serious medical needs. (Doc. No. 26, PageID# 173.) To the extent Greer has alleged that he was injured from the discontinuation of his medication, Jones argues that injury was caused by the pharmacy's cancellation of the prescription under TDOC policy and not his actions. (Doc. No. 26.) Finally, Jones argues that Greer's claims against him sound in medical negligence and should be dismissed for failure to comply with the procedural requirements of the Tennessee Health Care Liability Act (THCLA). (*Id.*) Greer responds that Jones acted with deliberate indifference to his serious medical needs by "not at least ordering some form of palliative symptomatic care" and that his claims should be permitted to proceed beyond the pleading stage and be decided based on evidence contained in his medical records.[2] (Doc. No. 29, PageID# 194.) Greer also asserts that the THCLA does not apply to this action because he brings constitutional claims under 42 U.S.C. § 1983, not state tort law. (Doc. No. 29.) Jones replies that Greer's amended complaint does not contain sufficient factual allegations to sustain a deliberate indifference claim against him and that consideration of information outside the complaint, such as Greer's medical records, is inappropriate at this stage.[3] (Doc. No. 30.)

---

[2]  Greer also asks the Court to compel the defendants to produce his medical records and issue subpoenas to various witnesses. The Court has not yet established a schedule for discovery. If Greer's claims are permitted to proceed beyond the pleading stage, Greer may seek discovery from the defendants and file any necessary discovery-related motions after a scheduling order has been entered.

[3]  Jones also asserts that his motion to dismiss was timely under Federal Rule of Civil Procedure 12(a)(1)(A), which permits a defendant who has timely waived service under Rule 4(d) to serve a responsive pleading within sixty days after the request for a waiver was sent. (*Id.*)

Greer filed an additional document in response to Jones's reply, reiterating his arguments that Jones acted with deliberate indifference to his serious medical needs and arguing that his medical records will "verify his allegations." (Doc. No. 32, PageID# 217.) The Court's Local Rules provide for the filing of a motion and supporting memorandum, a response in opposition, and optional reply brief. M.D. Tenn. R. 7.01 (motions). A party may seek leave to file a sur-reply on the rare occasion when "the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Kivilaan v. Am. Airlines, Inc.*, No. 3:04-0814, 2008 WL 11390792, at *1 (M.D. Tenn. Oct. 17, 2008) (quoting *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002)). Greer has not sought the Court's leave to file a sur-reply or shown that a sur-reply is necessary to address matters raised for the first time in Jones's reply. Accordingly, Greer's additional filing (Doc. No. 32) will not be considered in this Report and Recommendation.

## II. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Greer appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.    Analysis**

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). "To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz*, 592 F.3d at 722 (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)).

The Eighth Amendment, which applies to state governments through the Fourteenth Amendment, "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an

inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Berkshire v. Dahl*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). A deliberate indifference claim against an individual actor has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Blackmore*, 390 F.3d at 895. The objective component requires showing the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Blackmore*, 390 F.3d at 897). The subjective component requires a plaintiff to show that the prison official had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). Courts determine this subjective component "'in light of the prison authorities' current attitudes and conduct.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). The Supreme Court has long held that this showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

### A. Jones's Motion to Dismiss

#### 1. Timeliness

As a preliminary matter, Jones's motion to dismiss is timely under Federal Rules of Civil Procedure 4 and 12. Rule 4(d) provides that "[a]n individual . . . that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons" and may waive service upon the plaintiff's request. Fed. R. Civ. P. 4(d). A party who waives service may file a responsive pleading within sixty days after the request for a waiver was sent. Fed. R. Civ. P. 4(d)(3); Fed. R. Civ. P. 12(a)(1)(A)(ii). Here, the U.S. Marshals Service, which is authorized to effect service of process on Greer's behalf under 28 U.S.C. § 1915 and Federal Rule of Civil Procedure 4(c)(3), attempted to serve Jones several times between December 2020 and April 2021 but was unable to do so. (Doc. Nos. 22, 24.) On April 22, 2021, the Marshals Service sent a waiver of service to Jones's counsel, who executed the waiver on Jones's behalf on May 4, 2021. (Doc. Nos. 22, 24.) Under Rules 4 and 12, Jones could file a responsive pleading by June 21, 2021. His motion to dismiss was filed June 18, 2021. On June 21, 2021, Greer filed a document asking the Court to deny Jones's "motion for an additional sixty day delay[.]" (Doc. No. 27, PageID# 182.) This filing appears to be directed at the language in the waiver of service executed by Jones's counsel which states that Jones "must file and serve an answer or a motion under Rule 12 within 60 days from 04/22/21, the date when [the waiver] request was sent[.]" (Doc. No. 22.)

Although the request for Jones's counsel to waive service came from the Marshal and not from Greer, a defendant may unilaterally waive service even over a plaintiff's objection. *See Watson v. Mylan Pharms.*, 795 F. App'x 584, 587 n.5 (10th Cir. 2019) ("Although there is sparse authority on this issue, the only decisions we have located suggest that defendants may unilaterally waive service."); *Cutler v. Green*, No. 17-984, 2017 WL 2957817, at *4 n.7 (E.D. Pa. July 11, 2017) ("Although Rule 4 . . . does not explicitly state that a defendant may waive service in the

absence of a request from a plaintiff for a waiver, Rule 4(d)(1) does provide, in relevant part, that '[a]n individual . . . that is subject to service under Rule 4(d) . . . has a duty to avoid unnecessary expenses of serving the summons.'" (second, third, and fourth alterations in original)); *Valido-Shade v. Wyeth, LLC*, 875 F. Supp. 2d 474, 477 (E.D. Pa. 2012) ("waiver of service surely can occur without a request from the plaintiff"). A defendant's ability to do so effectuates Rule 4(d)'s stated purpose of "avoid[ing] unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1). And here, Jones's waiver of service worked in Greer's favor. If the Marshals Service had not asked Jones to waive service of process and continued to be unable to serve Jones, Greer's claims against Jones could have been subject to dismissal under Federal Rule of Civil Procedure 4(m). Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specific time.").

The Marshal's request that Jones's counsel waive service was proper under the circumstances. Having waived service, Jones had sixty days to respond to Greer's complaint. Fed. R. Civ. P. 4(d)(3). Jones's motion is timely under that deadline.

### 2. Greer's § 1983 Claims Against Jones

Greer argues that Jones, acting as a provider of medical care at a state prison, was deliberately indifferent to Greer's serious medical needs in violation of Greer's constitutional rights. Jones does not dispute that he is a state actor for purposes of liability under § 1983, and the Court finds that Greer's allegations regarding Jones's employment at BCCX are sufficient to support a reasonable inference that Jones acted under color of state law. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996 (quoting *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993)) (holding that private entities and individuals "performing the 'traditional state function' of

operating a prison" and providing medical care to incarcerated persons are state actors for purposes of liability under § 1983). The only remaining question is whether Greer has plausibly alleged that Jones deprived him of a constitutional right.

Jones does not contest that Greer's gastritis and gastric ulcer constitute a sufficiently serious medical need to satisfy the objective prong of his deliberate indifference claim. Rather, Jones argues that the subjective prong has not been met because Jones provided Greer with adequate treatment by ordering a second consultation instead of immediately prescribing Prilosec because of his concerns about the cancer risks associated with Greer's treatment. (Doc. No. 26.) Jones further argues that Greer has not alleged that he suffered a detrimental effect from the delay caused by the second consultation because Greer's prescriptions were discontinued before and after he received treatment from Jones due to a policy that "was beyond Dr. Jones'[s] control." (*Id.* at PageID# 175.)

Greer's amended complaint alleges that: (1) after his Prilosec prescription was cancelled, Greer had difficulty eating due to pain and heartburn and lost seven pounds; (2) Greer went to emergency sick call for acute abdominal pain on July 30 and August 3, 2020, and was told that he could not be prescribed Prilosec because of its potential cancer risk; (3) during the emergency sick calls, Greer told medical staff that he had been on acid-reducing medications since 1985; (4) on August 13, 2020, G.I. specialist Bahn conducted a consult visit and recommended that Greer take "Prilosec at a higher dose immediately[;]" (5) at a follow-up visit, Jones "chose to ignore [Bahn's] recommendations [and] did not order Prilosec or anti-acids but ordered another consult instead[;]" and (6) at that consult, Lively "agreed with the G.I. consult and wrote orders for Prilosec . . . and antacids . . . ." (Doc. No. 7, PageID# 43–44.) These allegations, construed in the light most favorable to Greer, are sufficient to support a reasonable inference that Jones perceived and

disregarded a substantial risk of harm to Greer because Jones knew that Greer had taken acid-reducing medications for roughly 35 years and began experiencing severe symptoms when his prescription for them was discontinued, but disregarded a G.I. specialist's recommendation that Greer resume taking Prilosec immediately.

Jones argues that Greer's allegations establish only a disagreement with Jones's chosen course of treatment. (Doc. No. 26.) Quoting a footnote from *Westlake v. Lucas*, Jones argues that, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). But Jones ignores *Westlake*'s primary holding "that a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." *Id.* at 860. Greer alleges that Jones could have readily provided relief for his gastric pain by prescribing acid-reducing medication and did not do so, resulting in continued pain and weight loss.[4] Taking the factual allegations in the amended complaint as true and construing them in Greer's favor, the Court finds that Greer has adequately alleged that Jones subjectively perceived and disregarded a substantial risk of serious harm to Greer by failing to prescribe him acid-reducing medication when Bahn recommended that he do so immediately.

Finally, Greer's allegations that he was also harmed by a policy enacted by Parker and Williams do not foreclose his claims against Jones. While Greer alleges that he was harmed by the prescription policy both before and after he saw Jones, he has also plausibly alleged that he

---

[4] Greer's amended complaint further alleges that the cancer risks Jones cites were related to different medications.

suffered harm due to Jones's failure to prescribe medication. (Doc. No. 7.) Although Greer will have to carry the burden of establishing the nature and extent of the harm caused by each alleged violation of his civil rights, he has plausibly alleged that he suffered harm because of Jones's failure to prescribe medication in addition to the harm alleged from of the policy enacted by Parker and Williams.

### 3. Applicability of the THCLA

Jones argues, in the alternative, that Greer's § 1983 claims should be dismissed for failure to comply with state-law requirements for health care liability claims under the THCLA. (Doc. No. 26.) By its terms, the THCLA applies to "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]" Tenn. Code Ann. § 29-26-101(a)(1). While "[t]his statement is facially broad enough to encompass a deliberate indifference claim under § 1983 based on the failure to provide necessary health care . . . , the Sixth Circuit has never construed the state statute to apply so broadly as to limit a litigant's ability to pursue claims base don the violation of his constitutional rights." *Heard v. Parker*, No. 3:17-cv-01248, 2018 WL 6435863, at *9 (M.D. Tenn. Dec. 6, 2018) (Trauger, J.) (citing *Reed v. Speck*, 508 F. App'x 415, 423–24, 419–21 (6th Cir. 2012)). Accordingly, courts in this district have found that the THCLA is "wholly inapplicable" to § 1983 claims for deliberate indifference to serious medical needs under the Eighth Amendment. *Pruitt v. McConnell*, No. 3:13-01003, 2015 WL 632142, at *1 (M.D. Tenn. Feb. 13, 2015). Jones does not acknowledge or address this authority. Absent any argument that the Court should depart from the reasoning of these cases, the Court will apply them here and find that the THCLA provides no basis to dismiss Greer's claims against Jones.

## B. Parker and Williams's Motion to Dismiss

Parker and Williams argue that Greer's claims against them should be dismissed because Greer "does not allege Commissioner Parker or Dr. Williams were the actors preventing [him] from receiving medication[,]" "refused to prescribe [medication] to him[,]" "were in the commissary and rejected [his] request for the medication despite his lack of funds[,]" or "prevented the pharmacy from filling his medication." (Doc. No. 18, PageID# 130.) They argue that, in order to state a claim for injunctive relief under 42 U.S.C. § 1983, Greer must allege that Parker and Williams were "'personally involved' in the alleged unconstitutional activity." (*Id.* at PageID# 129 (quoting *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982)).) But, as another court in this circuit has put it, Parker and Williams "are simply incorrect on how the law operates here." *Taaffe v. Drake*, No. 2:15-CV-2870, 2016 WL 1713550, at *5 (S.D. Ohio Apr. 29, 2016).

If Greer were seeking money damages from Parker and Williams in their individual capacities—as he does from Jones—he would be required to allege that they were personally involved in the acts he claims violated his constitutional protections. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *3–5 (M.D. Tenn. Mar. 5, 2020) (Trauger, J.) (explaining that the personal involvement standard applies only to individual-capacity claims for monetary relief). But Greer seeks only prospective injunctive relief against Parker and Williams in their official capacities. To pursue those claims, Greer must allege that Parker and Williams "are the ones who have the power to provide the relief sought, whether or not they were involved in the allegedly illegal conduct at issue." *Taaffe*, 2016 WL 1713550, at *5. As the court set out in *Taaffe*, that standard stems from *Ex parte Young*'s holding that, for a state officer to be enjoined from enforcing an unconstitutional act, "such officer must have some connection with the enforcement of the act . . . ." 209 U.S. 123, 157 (1908). Because Greer brings only official-capacity claims for injunctive relief against Parker and

Williams, he must allege their connection with enforcement of the prescription policy but need not allege that they were personally involved in denying him medication.

Parker and Williams also argue that Greer has not sufficiently pleaded the subjective component of a deliberate indifference claim against them because he has not alleged that they "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety'" and, thus, cannot show that they possessed the required culpable state of mind. (Doc. No. 18, PageID# 130 (quoting *Farmer*, 511 U.S. at 837).) Again, the cases Parker and Williams cite for this proposition address the standard applicable to individual-capacity claims for monetary relief, not official-capacity claims for injunctive relief, and Greer need not allege a subjective intent on the part of Parker and Williams to pursue the latter. Instead, Greer must allege that Parker and Williams were responsible for "an ongoing violation of federal law." *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, at *3 (6th Cir. Sept. 10, 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Greer has made allegations sufficient to meet that standard. Greer alleges that Williams, as TDOC Medical Director, "has the ultimate responsibility for the level of clinical care provided to prisoners of the TDOC" and "was ultimately responsible for the medication policy change that allowed/caused the withholding of some medically necessary and appropriate medications to prisoners." (Doc. No. 7, PageID# 47–48.) He alleges that Parker, as TDOC Commissioner, "is responsible for all policies enacted by the TDOC, including for clinical services" and "was ultimately responsible for the change in policy of withholding certain medications." (*Id.*) Greer alleges that the policy's continued implementation constitutes an ongoing violation of his "right to medically necessary and humane treatment regardless of [his] ability to pay privately for medications." (Doc. No. 7.)

As this Court found when it screened Greer's amended complaint, "because [Greer] alleges that his injuries are the result of TDOC policy, he states a claim for injunctive relief against TDOC officials Parker and Williams in their official capacities, whom he alleges to be responsible for that policy." (Doc. No. 8, PageID# 95.) Nothing in Parker and Williams's motion has invalidated that finding. Accordingly, Parker and Williams's motion to dismiss should be denied.[5]

### IV. Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Parker and Williams's motion to dismiss (Doc. No. 17) and Jones's motion to dismiss (Doc. No. 25) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt

---

[5] Parker and Williams also ask the Court to reject Greer's allegation that there was no exception to TDOC's prescription drug policy for necessity or indigence. (Doc. No. 18.) In making this argument, Parker and Williams cite and ask the Court to consider TDOC Policy 113.70, which, they assert, contains an exception for incarcerated people who are indigent. (Doc. No. 18.)

When considering a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright*, 839 F.3d at 518. In doing so, the court may consider only what is properly a part of the complaint or pleadings. Once "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). Among the matters that courts may consider without converting a motion to dismiss into a motion for summary judgment are "documents attached to a motion to dismiss" that are "referred to in a complaint and central to the claim," "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).

Parker and Williams did not attach a copy of TDOC Policy 113.70 as an exhibit to their motion, nor is that policy listed with other publicly available policies and procedures on the TDOC website. *See* Tenn. Dep't of Corr., *Policies and Procedures*, https://www.tn.gov/correction/about-us/policies-and-procedures.html (last accessed Jan. 5, 2022). Accordingly, Parker and Williams's arguments about the content of that policy and its applicability to Greer's claims are not properly considered at this stage of the action.

of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 18th day of January, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge