# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JAMES GREER, )
)
    Plaintiff, )
)
v. )    **Case No. 3:20-cv-00726**
)    **Judge Aleta A. Trauger**
THE TENNESSEE DEPARTMENT OF )
CORRECTION et al., )
)
    Defendants. )

## MEMORANDUM

Plaintiff James Greer, an inmate in the custody of the Tennessee Department of Corrections (TDOC), brings this lawsuit under 42 U.S.C. § 1983, alleging that defendant Ernest Jones, M.D. denied him adequate medical care in violation of his Eighth Amendment rights, by not providing him with medication necessary to treat his gastro-esophageal reflux disease (GERD), and that TDOC Commissioner Frank Strada[1] and TDOC Medical Director Kenneth Williams (collectively with Strada, the "TDOC defendants"), sued in their official capacity only, are responsible for a TDOC policy that, as implemented, allegedly requires incarcerated people who, like the plaintiff, are indigent, to purchase necessary over-the-counter (OTC) medications from the commissary. The matter was referred to the Magistrate Judge for the handling of all pretrial motions under Federal Rule of Civil Procedure 72.

---

[1] The Amended Complaint named former TDOC Commissioner Tony Parker as a defendant in his official capacity. (Doc. No. 7.) After Parker retired, he was substituted by operation of law by Interim TDOC Commissioner Lisa Helton under Federal Rule of Civil Procedure 25(d). (*See* Doc. No. 58.) Helton has been replaced by Frank Strada as the TDOC Commissioner who, therefore, has been automatically substituted under Rule 25(d) as a defendant with respect to Greer's official-capacity claims.

The Magistrate Judge has now issued a Report and Recommendation (R&R) (Doc. No. 153), recommending that the Motions for Summary Judgment filed by the TDOC defendants (Doc. No. 115) and by Dr. Jones (Doc. No. 119) both be denied based on the existence of material factual disputes. Now before the court are Objections filed separately by Jones (Doc. No. 158, 159 (Memorandum)) and the TDOC defendants (Doc. No. 155).

For the reasons set forth herein, the court will reject the Magistrate Judge's recommendations, grant the defendants' Motions for Summary Judgment, and dismiss this case in its entirety.

## I.    LEGAL STANDARDS

The standard of review applicable to a party's objections to a magistrate judge's ruling depends upon whether the objections pertain to a dispositive or non-dispositive matter. In the event of a magistrate judge's ruling on a dispositive matter, such as a motion for summary judgment, any party may, within fourteen days after being served with a magistrate judge's recommended disposition, "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). An objection is "properly" made if it is sufficiently specific to "enable[ ] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II. BACKGROUND

### A. Procedural History

In the Amended Complaint, which is the operative pleading, Greer alleges that, after being on acid-reducing medications for thirty-five years, his Prilosec prescription was abruptly not renewed in July 2020. A nurse at Bledsoe County Correctional Complex (BCCX) in Pikeville, Tennessee, where Greer was then incarcerated, told Greer that, because of a new TDOC policy, Policy 113.70, he would no longer receive Prilosec as a prescribed medication and would have to buy it at the commissary. (Doc. No. 7.) Greer told the nurse that he was indigent and could not afford to purchase medication; the nurse told Greer that there were no exceptions to the policy. Greer alleges that, when his Prilosec prescription ran out, he began experiencing severe symptoms that required him to seek emergency medical care. He alleges that Dr. Jones's failure to prescribe Prilosec for him, while he was aware of Greer's symptoms and his indigency, and after other medical providers had directed that the prescription be reinstated, constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Greer also alleges that the TDOC defendants were responsible for the policy that led to his being denied a prescription for a needed medication.

The court screened the Amended Complaint under 28 U.S.C. § 1915(e)(2) and found that it stated a colorable claim against Dr. Jones in his individual capacity, based on the plaintiff's allegations of his "personal involvement in depriving [Greer] of medication that was deemed to be medically necessary by two specialists as well as [Greer]'s prior medical history." (Doc. No. 8, at 4.) The court also found that the Amended Complaint stated a claim for prospective injunctive relief under § 1983 against the TDOC defendants in their official capacities, based on allegations

that they are responsible for the policy that caused his injuries. (*See id.*)[2] The court subsequently denied motions to dismiss under Rule 12(b)(6) filed by all three remaining defendants.

Following a contentious course of discovery, Jones and the TDOC defendants filed their separate Motions for Summary Judgment, supporting Memoranda of law, Statements of Undisputed Material Facts, and various exhibits, including what appears to be the entirety of Greer's medical record for the duration of his incarceration. (Doc. Nos. 115–17, 119–20, 122, 122-1.) The plaintiff filed responses in opposition to the motions. (Doc. Nos. 134, 134-1, 134-1, 136–37, 147.) In addition, although he attempted to respond to the Statements of Undisputed Material Fact, he did not do so in a manner that complied with the court's Local Rules. The Magistrate Judge, therefore, deemed undisputed the "facts asserted by Jones, Strada, and Williams to which Greer has not adequately responded." (Doc. No. 153, at 20; *see also id.* at 2 n.3 (noting that the facts recited in the R&R are "drawn from Jones's statement of undisputed material facts (Doc. No. 121), Strada and Williams's statement of undisputed material facts (Doc. No. 116), and the parties' summary judgment exhibits (Doc. Nos. 116-1–116-3, 119-1, 122, 134, 146-1)").) At the same time, the Magistrate Judge correctly recognized that the defendants, as the parties moving for summary judgment, nonetheless bore the burden "under Rule 56 to show an absence of any genuine dispute of material fact as to Greer's claims." (*Id.* at 20 (citing *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991)).)

## B.    Factual Background

The court accepts and adopts as if it were set forth herein in its entirety the Magistrate Judge's comprehensive and detailed summary of the facts in the "Factual Background" section of

---

[2] The court dismissed the claim against Bledsoe Clinical Pharmacy on the basis that it is not a "person" for purposes of liability under § 1983. (*Id.*)

the R&R, to which no party has submitted objections. (Doc. No. 153, at 2–13.) This opinion presumes familiarity with those facts.

## III. THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### A. The TDOC Defendants

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)).

When a plaintiff names a state official as a defendant in a § 1983 lawsuit that seeks to "enjoin the enforcement of an act alleged to be unconstitutional," the state official must have some connection with the enforcement of the act in order for suit against him to be appropriate. *Ex Parte Young*, 203 U.S. 123, 157 (1908). The TDOC defendants expressly "concede that they are proper parties in a suit for injunctive relief under *Ex parte Young*." (Doc. No. 117, at 8.) However, as they point out, an *Ex parte Young* claim "must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corrs.*, 703 F.3d 956, 964 (6th Cir. 2013).

The TDOC defendants argue that they are entitled to summary judgment, because (1) TDOC Policy 113.70 is constitutional on its face, and "[n]othing in the plain language of the policy prohibits Plaintiff from receiving a prescription for OTC Prilosec" (Doc. No. 117, at 7); and (2) the undisputed facts establish that the plaintiff has failed to establish an ongoing violation of federal law, because, "[o]nce verified, Plaintiff's condition has been subsequently treated through multiple requests for non-formulary medication, including a current prescription for Protonix

which is valid until January 2023," and, according to the TDOC defendants, Greer "will continue to receive appropriate non-formulary prescriptions for as long as they are clinically indicated" (*id.* at 8–9). They argue specifically that the policy as written directly addresses and provides relief for indigent prisoners.

> Policy 113.70 states, in relevant part:
>
> All OTC medications listed on the approved OTC list, and available at the site, shall be obtained by the inmate via commissary, unless the inmate is determined to be indigent by the Health Services Administrator, or their designee.
>
> When inmates are determined to be indigent, OTC medications shall be written for 30 days, unless written based on clinical practice guidelines for a diagnosed medical condition.

(Doc. No. 116-2, TDOC Policy 113.70(VI)(C)(5).) Regarding the TDOC defendants' first argument, the Magistrate Judge agrees with the TDOC defendants that Policy 113.70 is constitutional on its face but finds that there is a material factual dispute as to whether it is constitutional in practice, largely because the TDOC defendants do not address why the plaintiff was not provided a 30-day stop-gap prescription for Prilosec after his long-term prescription expired in mid-July 2020, and because, according to the R&R, they offer nothing to support their claim that the 30-day provision in the policy "was available to Greer or is being applied in practice." (Doc. No. 153, at 26.)

Specifically regarding the question of Greer's entitlement to prospective injunctive relief, the R&R recognizes that a past violation of rights "does not in itself show a present case or controversy" that will warrant injunctive relief. (*Id.* at 26 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).) Rather, the plaintiff must "show a 'real or immediate threat that [he] will be wronged again.'" (*Id.* (quoting *Williams v. Ellington*, 936 F.2d 881, 889 (6th Cir. 1991)).) The R&R also recognizes that the medical records provided by the defendants establish that "requests to prescribe non-formulary GERD medications to Greer have regularly been approved since

August 2020" and that he is "receiving longer-term prescriptions for OTC medications under the second clause of Policy 113.70's indigency provision." (*Id.* at 26 (citing Doc. No. 116-3).) The R&R also finds, however, that the TDOC defendants did not address the evidence in the record showing numerous sick call requests from 2021 and 2022 showing that Greer's prescriptions for Prilosec and Protonix had lapsed. The Magistrate Judge, construing the record in the light most favorable to the plaintiff, found the available evidence sufficient to "create a genuine issue of material fact that [the plaintiff] continues to experience harm because Policy 113.70's indigency provision is not being fully—and constitutionally—implemented." (*Id.* at 27.)

The TDOC defendants object to the R&R's finding that a reasonable jury could conclude that the TDOC defendants failed to ensure the full implementation of Policy 113.70's requirement that, "[w]hen inmates are determined to be indigent, OTC medications shall be written for 30 days, unless written based on clinical practice guidelines for a diagnosed medical condition." They argue that the first phrase of this policy—"OTC medications shall be written for 30 days"—"only applies to the authorization of the OTC medication and not the dispensing of OTC medication"; that this portion of the policy was "never meant to function as a stop gap provision once longer term authorizations are approved"; and that "there is no evidence in the record to suggest that lapses in the administration of Plaintiff's medication are occurring as a result of the operation of Policy 113.70." (Doc. No. 155, at 3.)

The court is persuaded by the TDOC defendants' latter argument. First, as the Magistrate Judge found, it is clear that Policy 113.70 is constitutional on its face. *Accord Nichols v. Centurion*, No. 1:20-CV-199-DCLC-CHS, 2022 WL 1721452, at *4 (E.D. Tenn. May 27, 2022) (finding the same policy to be facially constitutional). As written, the policy contains an exception for indigent defendants.

Second, as the TDOC defendants argue, the record reflects that the plaintiff's prescriptions for OTC medications to treat his GERD have been continuously approved since August 2020. Even assuming that the plaintiff, as he alleges, has continued to experience occasional lapses in his ability to obtain his medication for periods of several days or even weeks, nothing in the record supports his assertion that the application of Policy 113.70 is what has led to those lapses. *See, e.g.*, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). The plaintiff himself argues that the lapses were due to "transfers between prisons, new physicians and mid-level providers, med expiration and re-order dates and the provision of the meds by pharmacy." (Doc. No. 136,at 16.)

The evidence in the record establishes that the plaintiff's prescription for OTC medication to treat his GERD has been continuously renewed since September 2020. To the extent that there have been occasional lapses, nothing but the plaintiff's speculation ties those lapses to the implementation (or incorrect interpretation) of Policy 113.70. Neither the plaintiff's speculation as to causation nor his citations to his own sick calls and grievances constitutes evidence, even circumstantial evidence, sufficient to satisfy his obligation to produce *prima facie* proof of the requisite causal connection.

The court, therefore, finds that the TDOC defendants are entitled to summary judgment on the plaintiff's claim for prospective injunctive relief relating to the implementation of Policy 113.70.

### B.    Dr. Jones

The plaintiff's § 1983 claim against Dr. Jones is premised on allegations that Jones was deliberately indifferent to the plaintiff's serious medical need, insofar as he denied Greer Prilosec between July 13, 2020 and August 28, 2020, despite actual knowledge that (1) Prilosec (or a similar

OTC medication) was medically necessary; (2) Greer was indigent and could not purchase OTC medications at the prison commissary; and (3) Greer began experiencing serious symptoms immediately upon the discontinuation of his Prilosec prescription that could have been relieved by reinstating the medication, even while waiting for tests confirming its medical necessity.

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A deliberate indifference claim against a prison official has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

The Sixth Circuit has explained that

> when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. The plaintiff must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment. There must be medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain. This will often require expert medical testimony . . . showing the medical necessity for the desired treatment and the inadequacy of the treatments the inmate received. The plaintiff also must place verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment.

*Rhinehart v. Scutt*, 894 F.3d 721, 737–38 (6th Cir. 2018) (internal quotation marks and citations omitted).

The subjective component requires a plaintiff to show that the actor had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v.*

*Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This showing "entails something more than mere negligence" but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). The Sixth Circuit has further explained that "the plaintiff must show that each defendant acted with a mental state equivalent to criminal recklessness." *Rhinehart*, 894 F.3d at 738. While the plaintiff may rely on circumstantial evidence, he must "present enough evidence from which a jury could conclude that each defendant 'so recklessly ignored the risk that he was deliberately indifferent to it.'" *Id.* (quoting *Cairelli v. Vakilian*, 80 F. App'x 979, 983 (6th Cir. 2003)). Moreover, a doctor "is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Id.* This is a high bar. "The doctor must have "consciously expos[ed] the patient to an excessive risk of serious harm." *Id.* at 738–39 (quoting *Richmond v. Huq*, 885 F.3d 928, 940 (6th Cir. 2018)).

Dr. Jones, in this case, does not dispute that he is a state actor and that he acted under color of state law for purposes of the plaintiff's § 1983 claim. He moves for summary judgment on the grounds that (1) Greer failed to put forth "verifying medical evidence," as "required in this case to prove" an alleged serious medical need or to prove the detrimental effect of the alleged delay in treatment; (2) he cannot establish that he suffered a sufficiently serious medical need to state a deliberate indifference claim, because courts have generally found that GERD is not a sufficiently

serious condition; (3) the plaintiff failed to prove that Dr. Jones was "subjectively aware of a substantial risk to an alleged serious medical need and then disregarded that risk"; (4) failure to comply with a policy does not give rise to a constitutional violation; and (5) in any event, Dr. Jones "did not have the authority to . . . approve or deny non-formulary prescriptions" and therefore lacks the requisite personal involvement for individual liability under § 1983. (Doc. No. 120, at 10–15.) The R&R considered the evidence in the record and recommends that Dr. Jones's motion be denied on the grounds that there is a material factual dispute as to whether the plaintiff's GERD constitutes a sufficiently serious medical need and as to whether Dr. Jones was subjectively deliberately indifferent to that medical need.

The court has examined the record in its totality and cannot agree. The evidence, in fact, shows that the plaintiff, as soon as his GERD medications were discontinued in mid-July 2020, put in five sick calls in the span of less than two weeks complaining of severe indigestion and acid reflux. On July 26, 2020, Dr. Jones approved an order for the plaintiff to receive an antacid to address his symptoms, albeit not the medication the plaintiff requested. (Doc. No. 119-1, Jones Decl. ¶ 16; Doc. No. 122, at 34.) On July 28, 2020, a mid-level provider, Stacy Swafford, PA-C, noted that she had spoken without Dr. Jones and would try to get a GI consult for possible scope and that "pt does not need to be on [Prilosec] long term." (Doc. No. 122, at 36.) Dr. Jones requested approval for a gastroenterology consult and endoscopy for Greer, which Dr. Lively approved on July 31, 2020. (Jones Decl. ¶¶ 17, 19; TDOC 00036–41.) There is no evidence that the plaintiff submitted additional sick calls after this point through the end of August 2020.

Dr. Jones approved another antacid for the plaintiff on August 6, 2020; he ordered comprehensive tests for the plaintiff on August 12, 2020 but determined, "based on [his] evaluation and clinical judgment," that there should not be further changes in the plaintiff's course of

treatment (which included at least six other prescription medications) at that time, particularly as pertained to the time of day when the medications were to be taken. (Jones Decl. ¶¶ 20, 21, 23; Doc. No. 122, at 42, 45–47.) The plaintiff saw Josephine Bahn, NP, for a gastroenterology consult on August 13, 2020; she noted that the plaintiff appeared to be in "no acute distress" and recommended that he be prescribed Protonix 40 mg daily or Prilosec 40 mg twice per day. (Doc. No.1122, at 54–55.) Dr. Jones evaluated the plaintiff on August 19, 2020 and also recommended that the plaintiff be prescribed Protonix for 45 days. (Doc. No. 122, at 60.) However, the recommendation had to be approved. It was denied on August 20, 2020, by Dr. Orville Campbell, the former Assistant Director of Utilization Management, who believed (incorrectly) that the plaintiff was already on Omeprazole, and he needed to know the results of the EGD test. (Jones Decl., ¶ 29; Doc. No. 122, at 59.) On August 24, 2020, the plaintiff refused a consult for a colonoscopy and EGD and signed a Refusal Medical Services form reflecting the same on that date. (Jones Decl., ¶ 31; Doc. No. 122, at 61.)

On August 25, 2020, Dr. Campbell approved a resubmitted Request to Use Non-Formulary Drug for Prilosec, 40 mg twice per day for 90 days, with an expiration date of November 21, 2020. (Jones Decl. ¶ 32; Doc. No. 122, at 65.) On the same day, after it was approved, Dr. Teresa Lively prescribed the Plaintiff Prilosec, 40 mg capsules, to be taken one capsule per day twice per day for 90 days. (Jones Decl. ¶ 33; Doc. No. 122, at 62.) This prescription was set to expire on November 23, 2020, and the plaintiff actually received the medication. (Jones Decl. ¶ 33; Doc. No. 122, at 67–68, 72–73.) At the same time, Dr. Lively prescribed Greer calcium antacid (TUMS), with two tablets to be taken before meals and at bedtime as needed for 60 days. (Jones Decl. ¶ 34; Doc. No. 122, at 62.) This prescription was set to expire on October 24, 2020. (Jones Decl. ¶ 34; Doc. No. 122, at 67–68.) The plaintiff received the TUMS. (Jones Decl. ¶ 34; Doc. No. 122, at 67–68.) Dr.

Lively ordered follow up with a mid-level provider within 30 days. (Jones Decl. ¶ 35; Doc. No. 122, at 62.) The upper GI endoscopy eventually performed on October 13, 2020 revealed "LA Grade B reflux esophagitis" and GERD with no bleeding found. (*Id.* at 75.) It was recommended that he continue on Prilosec. (*Id.* at 76.)

The R&R recognizes that the plaintiff's claims against Dr. Jones are based on his denying the plaintiff Prilosec between July 13, 2020 and August 28, 2020. The court finds, on this record, that the plaintiff's claim against Dr. Jones amounts to a dispute about the plaintiff's course of treatment. But nothing on this record is sufficient to satisfy the standard embraced by the Sixth Circuit and articulated in *Rhinehart*, which, as set forth above, requires, in cases alleging inadequate treatment as opposed to no treatment at all, "a showing of care so grossly incompetent [or] inadequate. . . as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737. While the record documents that the plaintiff was unable to purchase OTC meds from the commissary due to his indigency and reported subjective complaints of pain and nausea as a result of being deprived of Prilosec, the undisputed facts do not demonstrate that Dr. Jones denied treatment altogether or ignored the plaintiff's complaints, or that his treatment fell to the level of gross incompetence.

Moreover, while the court agrees with the Magistrate Judge that GERD, depending on the circumstances, can qualify as a sufficiently serious medical need to satisfy the objective component of a deliberate indifference claim, the medical record in this case does not establish that the plaintiff was experiencing such objectively obvious symptoms that Dr. Jones can be presumed to have been "subjectively aware of a substantial risk to an alleged serious medical need" or that he consciously disregarded that risk. *Accord Miles v. Ky. Dep't of Corrs.*, No. 5:16-CV-073-TBR, 2019 WL 469776, at *4 (W.D. Ky. Feb. 6, 2019) (finding that the plaintiff's medical

needs regarding his GERD were not "obvious," as compared to "medical conditions courts in the Sixth Circuit have commonly deemed "obvious" (citing, for example, *Newberry v. Melton*, 726 F. App'x 290, 295 (6th Cir. 2018) (finding the plaintiff's condition,"characterized by frequent, often lengthy, and aggressive convulsions," to be "sufficiently obvious that it does not require additional verifying medical evidence"); *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005) (holding that "the emergency hospital admission coupled with a stay of several days satisfies the objective requirement of a 'sufficiently serious' medical need," after a lock-up facility failed to give an arrestee her required insulin injections); *Blackmore*, 390 F.3d at 899 (finding it significant that the plaintiff, besides complaining of pain, exhibited vomiting—"a clear manifestation of a internal physical disorder"). The plaintiff here submitted five sick-call requests between July 17, 2020, and July 24, 2020, complaining of subjective symptoms, but there is no proof that he was visibly in distress. Moreover, again, his complaints were not ignored. The record, in short, does not establish a material factual dispute as to whether the failure to continue the plaintiff's access to Prilosec for a period of several weeks constituted deliberate indifference to his serious medical needs.

Insofar as the plaintiff's claim is premised upon Dr. Jones's failure to comply with Policy 113.70, which the plaintiff claims should have meant that he receive a 30-day extension prescription of his Prilosec prescription in July 2020 instead of being cut off cold-turkey, the court agrees with Dr. Jones that failure to comply with a TDOC policy, *per se*, is not evidence of deliberate indifference. *See Helphenstine v. Lewis Cty.*, 60 F.4th 305, 322 (6th Cir. 2023) ("Alone, the failure to follow an internal policy does not give rise to a deliberate indifference claim." (citing *Griffith v. Franklin Cty.*, 975 F.3d 554, 567 (6th Cir. 2020)). The operative question is whether Dr. Jones was deliberately indifferent to an objectively serious medical need. Even assuming that

the medical evidence in the record could satisfy the plaintiff's obligation to produce "verifying medical evidence," the record standing alone is not sufficient to satisfy the plaintiff's obligation to prove that the delay in providing his Prilosec had a sufficiently detrimental effect on his condition so as to establish an Eighth Amendment violation. *See Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (holding that, if a need for medical treatment is not immediately obvious, its seriousness is evaluated under the "effect of the delay standard," which requires the submission of verifying medical evidence to establish "the detrimental effect of the delay in medical treatment").

In sum, the evidence, viewed in the light most favorable to the plaintiff, does not support a reasonable inference of deliberate indifference. Based on the record as a whole, the court will reject the R&R and grant Dr. Jones's Motion for Summary Judgment.

## IV.    CONCLUSION

For the reasons set forth herein, the court will grant the defendants' Objections (Doc. Nos. 155, 158) to the R&R (Doc. No. 153). The court will reject the R&R, grant the defendants' Motions for Summary Judgment (Doc. Nos. 115, 119), and dismiss this case with prejudice. All other pending motions will be denied as moot.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge